**SMI INDUSTRIES, INC.**

v.

**LANARD & AXILBUND, INC.**

**Civ. A. No. 79–830.**

United States District Court,
E. D. Pennsylvania.

Dec. 11, 1979.

Paul R. Rosen, Edward M. Dunham, Jr., Philadelphia, Pa., for plaintiff.

Michael Minkin, Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

DITTER, District Judge.

Lanard & Axilbund, Inc. (L & A) and the corporate predecessor of SMI Industries, Inc. (SMI) entered into a commercial lease. The lease was later assigned to SMI which used the rented area as a clothing factory. SMI defaulted in its rent, and L & A distrained and confessed judgment under the lease. A sheriff's levy and writ of possession were issued, but no distress sale was held. Plaintiff then filed a petition in state court to open the judgment. Although the petition was granted, levies, attachments, and executions remain intact under Pennsylvania law until the validity of the judgment is adjudicated and the judgment is stricken. Instead of proceeding with the state court hearing on the judgment's validity, SMI filed this suit in federal court seeking declaratory and injunctive relief. Plaintiff alleges that the distraint on plaintiff's equipment and goods is unconstitutional; the lockout and confessions of judgment violate due process; and the Pennsylvania law which leaves levies, attachments, and executions in effect after judgments upon which they are based have been opened is unconstitutional. SMI also prays for damages based on interference with its constitutional and contractual rights.

Presently before me is defendant's motion to dismiss the complaint for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted.[1] For the reasons expressed in this memorandum, I will grant defendant's motion.

## THE CONSTITUTIONALITY OF DISTRAINT—COUNT I

■ Count I of the complaint avers that the distraint of plaintiff's property, the value of which exceeds the rent arrearage, violates the due process clause of the fifth and fourteenth amendments. Plaintiff was behind in its rent when defendant without notice locked plaintiff out and took possession of the building which housed all of its inventory, equipment, furniture, fixtures, records, and other assets. Defendant then distrained upon plaintiff's goods by tacking a notice on the door of the premises. It is evident from the allegations of the complaint, viewed in the light most favorable to plaintiff, that the distraint involved only private parties; no sheriff or local official was needed to make or enforce the distraint and no distress sale was held. Defendant argues that under these circumstances no state action exists to vest jurisdiction in this court. I agree.

■ Sections 8(a) and 15 of the lease authorize the defendant-landlord to distrain upon the plaintiff-tenant's goods. This is a commercial lease and nowhere is unconscionability or inequality of bargaining power alleged. Consequently, the parties

---

1. Plaintiff argues that pursuant to Fed.R.Civ.P. 12(b) a motion making the defense of failure to state a claim upon which relief can be granted shall be made before pleading if further pleading is required; thus defendant's motion to dismiss filed after the answer to the complaint should be barred as untimely. However under Fed.R.Civ.P. 12(h)(2) a defense of failure to state a claim upon which relief can be granted may be made by motion for judgment on the pleadings. Thus, I will treat defendant's motion as if it were filed under Fed.R.Civ.P. 12(c) as a motion for judgment on the pleadings. See *Jacobsen v. Woodmoor,* 400 F.Supp. 1 (W.D.Mo.1975). However I will also consider the exhibits attached to the complaint and the petition to open (a copy of which is attached to the reply memorandum of defendant's motion to dismiss).

are bound by the clear contract language which allows the landlord the right to distrain for unpaid rent. A remedy devised by private parties and executed without the help of public officials does not constitute state action. It is "well-settled that the fourteenth amendment applies only to actions of the 'States' and not to actions which are 'private'." *Gibbs v. Titelman,* 502 F.2d 1107, 1110 (3d Cir.), cert. denied, 419 U.S. 1039, 95 S.Ct. 526, 42 L.Ed.2d 316 (1974).

State action can be categorized into cases: "(1) where state courts enforced an agreement affecting private parties; (2) where the state 'significantly' involved itself with the private party; and (3) where there was a private performance of a government function." (footnote omitted) *Magill v. Avonworth Baseball Conference,* 516 F.2d 1328, 1331 (3d Cir. 1975).

In the instant case, the distraint merely consisted of the posting of a notice by a private party. Since no enforcement by state officials or courts was needed for this distraint notice, it does not fall within the first category of state action.

2. In *Parks v. Mr. Ford,* a plurality of the Third Circuit en banc held that retention of a car under a common law garageman's lien did not constitute state action, however, sale of the vehicle did. Additionally, the court found that the Pennsylvania statutes authorizing the sale of a car by the repairman violate fourteenth amendment due process. For an excellent discussion of this case, see Scholl, *Parks v. Mr. Ford and the Development of a Rational Approach to Resolving Inconsistencies in Results of Due Process Attacks on Creditors' Remedies,* 23 Vill.L.Rev. 713 (1977).

3. In *Fitzgerald,* the Third Circuit found state action existed where a heavily state regulated private harness racing association expelled a licensed trainer and driver from its track without a hearing for allegedly violating a state harness commission rule. The court held that the participation of officials of the state racing commission in plaintiff's expulsion was critical to its finding of state action. *Fitzgerald,* supra, 607 F.2d at 599-600.

4. See *Santiago v. McElroy,* 319 F.Supp. 284, 286 87 (E.D.Pa.1970); *Lewis' Appeal,* 66 Pa. 312, 313 (1871); *Moss' Appeal,* 35 Pa. 162 (1860), 22 P.L.E., Landlord and Tenant § 361 at 144.

Similarly, the state has not " 'significantly' involved itself with the private party." Defendant's possession of plaintiff's goods was not compelled or coerced by the state, nor was the defendant participating in a joint activity with the state. See *Parks v. Mr. Ford,* 556 F.2d 132 (3d Cir. 1977).[2] This second category of state action is typically found "when state officials in an extensively regulated industry participate and 'put their weight' behind the challenged private act." *Fitzgerald v. Mountain Laurel Racing, Inc.,* 607 F.2d 589, 600 n.15 (3d Cir. 1979).[3] That is not the case here.

The third type of state action involves "the exercise by a private entity of powers traditionally exclusively reserved to the State" or "traditionally associated with sovereignty." *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 352–53, 95 S.Ct. 449, 454, 42 L.Ed.2d 477 (1975). Distraint was a remedy available to private parties under the common law.[4] In Pennsylvania, the common law has been codified into Article III, Section 302 et seq. of the Pennsylvania Landlord and Tenant Act of 1951, 68 P.S. § 250.302 et seq.[5]

5. The Pennsylvania Landlord and Tenant Act [the Act] provides that "[p]ersonal property located upon premises occupied by a tenant shall, unless exempted by . . . this act, be subject to distress for any rent reserved and due . . .". Rent can be considered "reserved and due" even if the tenant is one day late. *Baker v. Spector,* 90 Pa.Super. 163 (1927). Certainly, the delay of approximately a month in the instant case triggers the distraint provisions under the Act.

Other sections of the Act provide for a subsequent hearing, objective appraisement of property, sheriff's sale and remedies for improper distress. 68 P.S. § 250.302 et seq. It is important to note that although public officials may become involved at later stages of the distraint process, no such person acted in the instant case.

*Shelley v. Kraemer,* 334 U.S. 1, 68 S.Ct. 836, 92 L.Ed. 1161 (1948), does not support a conclusion that the enactment of a state statute and the necessity of state judicial action for enforcement amount to state action. In *Shelley,* the Supreme Court held that a state court injunction enforcing a racially restrictive covenant is state action. As the Court of Appeals for the Third Circuit noted in *Parks v. Mr. Ford,*

The Court of Appeals for the Third Circuit found the origin of a challenged activity important in determining whether the power is one "traditionally exclusively reserved to the State." Since distraint was a common law remedy long before the enactment of the Fourteenth Amendment, Pennsylvania's passage of the Landlord and Tenant Act was not a delegation to a private party of powers traditionally reserved to the sovereign. Rather, the Act merely regulates how those powers are to be used. See *Parks v. Mr. Ford,* supra 556 F.2d at 138–39.

The distraint procedure used in the instant case involved plaintiff's being deprived of its goods by the posting of a notice. No sale was attempted. This case is like others dealing with private remedies which courts have repeatedly held do not involve state action. For example, the Third Circuit found that self-help repossession of automobiles under the Uniform Commercial Code lacked state action, *Gibbs v. Titelman,* supra, and that the exercise of a common law garageman's lien did not involve state action. *Parks v. Mr. Ford,* supra.

Most recently, the Supreme Court in *Flagg Brothers, Inc. v. Brooks,* 436 U.S. 149, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978), ruled that a self-help provision of the Uniform Commercial Code authorizing the sale of goods detained in storage by a warehouseman because his bill was unpaid did not constitute state action. The Court did not rely on the distinction between common law and statutory origins found in *Parks.* Instead, the Court noted that in the commercial world, various remedies, such as a warehouseman's lien, have been developed as a means to settle disputes. Such matters are not traditionally a function of the sovereign and only the sovereign as is, for example, the conduct of an election. *Flagg Brothers,* supra, 98 S.Ct. at 1734–37. Similarly, the settlement of disputes between the commercial landlord and tenant tradi-

tionally has not been the exclusive province of the state. Parties to a commercial lease frequently bargain about its terms and may waive rights, such as distraint, which the law otherwise allows. They may avail themselves or agree not to avail themselves of a variety of statutory remedies (see for example those set forth in 68 P.S. §§ 250.-306–307 and 250.311–313) when either party has been abused. Where historically there have been so many rights and remedies in such profuse variety, it can hardly be said that the defendant here has exercised a power which has always been the exclusive prerogative of the state.

Plaintiff alleges that the distraint provisions have been declared unconstitutional. I am aware of the fact that the constitutionality of Pennsylvania's distraint statute has been questioned in this district; however those cases involved a seizure by a public official, a circumstance not present in this case. See, e. g. *Litton Business Systems, Inc. v. Paul L'Esperance, Inc.,* 387 F.Supp. 1265 (E.D.Pa.1975); *Gross v. Fox,* 349 F.Supp. 1164 (E.D.Pa.1972), vacated and remanded, 496 F.2d 1153 (3d Cir. 1974); *Sellers v. Contino,* 327 F.Supp. 230 (E.D.Pa. 1970); *Santiago v. McElroy,* 319 F.Supp. 284 (E.D.Pa.1970). In view of the fact that none of these cases have found state action in the mere posting of a distraint notice by a private party, absent any subsequent seizure by a state official, I will follow the suggested policy of the Court of Appeals for the Third Circuit in *Gross v. Fox,* 496 F.2d 1153 (3d Cir. 1974): "Courts generally try to avoid reaching constitutional issues, especially where, as here, a federal court is asked to pass on a state statute, and the question is not free from doubt." Id. at 1154. In *Gross,* the court vacated the three-judge court's pronouncement that the Pennsylvania distraint statute was unconstitutional per se.

Paragraph 27(b) of the complaint alleges that the Pennsylvania distraint procedures are unconstitutional citing *Litton Business*

---

supra 556 F.2d at 135–36 n. 6, the holding in *Shelley* has been limited to discrimination

cases. See *Hardy v. Gissendaner,* 508 F.2d 1207 (5th Cir. 1975).

*Systems,* supra. That case relied upon *Stots v. Media Real Estate Co.,* 355 F.Supp. 240 (E.D.Pa.1973), which was based upon the lower court decision in *Gross.* The Third Circuit's subsequently vacating this opinion in *Gross* casts serious doubt on plaintiff's assertion that the distraint statute is unconstitutional on its face. Furthermore, the Supreme Court's restrictive view of state action as expressed in *Flagg Brothers* may change this Circuit's view of distraint.

## CONSTITUTIONALITY OF THE CONFESSED JUDGMENT—COUNT II

The commercial lease between L & A and SMI's corporate predecessor contains a confession of judgment clause for failure to pay rent. When SMI defaulted in its rent, L & A filed a complaint in confession of judgment pursuant to Rule 2951(b) of the Pennsylvania Rules of Civil Procedure. The prothonotary entered judgment based on the warrant of attorney in the lease and judgment for possession of the premises was confessed pursuant to the authority contained in a separate warrant of attorney. Notice of the judgments was given to SMI; the sheriff served SMI with a writ of possession and levied on the goods, equipment, and other personalty on the premises. Prior to a sheriff's sale but after possession of the premises was given to L & A and the judgments had been executed upon, SMI petitioned the Court of Common Pleas of Philadelphia to open the two judgments but did not ask that the execution or levy be set aside. The Honorable Bernard Snyder opened the judgments but refused SMI's request to set aside the levies, attachments, and executions. SMI filed a petition for supersedeas in the Superior Court of Pennsylvania from Judge Snyder's refusal to vacate the executions and levies. The Superior Court ruled that it would vacate the executions and levies upon SMI's posting a bond of $75,000. Instead of posting the bond, SMI brought the instant suit.

Count II of the complaint alleges violations of due process by virtue of the confession of judgment clause in the lease and the subsequent imposition of levies, attachments, and executions based upon the confessed judgments. Citing *D. H. Overmyer Co. v. Frick Co.,* 405 U.S. 174, 92 S.Ct. 775, 31 L.Ed.2d 124 (1972), which upheld the constitutionality of confession of judgment clauses in commercial leases,[6] defendant has moved to dismiss Count II on the grounds that plaintiff failed to state a claim upon which relief can be granted.

In *Overmyer,* two corporations entered into a cognovit clause valid under Ohio law. When Overmyer defaulted in payment, Frick exercised its contractual rights and obtained a judgment without notice or hearing. The Supreme Court held that a cognovit or confession of judgment clause was not per se unconstitutional if the waiver of due process rights was made voluntarily, intelligently, and knowingly. In the instant complaint, there are no allegations that any part of the lease was a product of over-reaching by one party due to inequality of bargaining power nor does the plaintiff claim that the lease was an adhesion contract. In the absence of any facts which would take this case outside the *Overmyer* situation of presumed equality of contractual relations between commercial parties, the confession of judgment clause acts as an effective waiver of due process rights.

 Even if plaintiff contracted for a general waiver of rights under the confession of judgment clause, it may not have anticipated defendant's specific actions.

---

6. Defendant's motion to dismiss Count II wisely did not rely on the absence of state action. The constitutionality of confession of judgment clauses has been the subject of many Supreme Court cases in which state action has been presumed. *Swarb v. Lennox,* 405 U.S. 191, 92 S.Ct. 767, 31 L.Ed.2d 138 (1972); *D. H. Overmyer Co. v. Frick Co.,* 405 U.S. 174, 92 S.Ct. 775, 31 L.Ed.2d 124 (1972). The prothonotary who registers a confessed judgment and the sheriff who executes it by levying against the property and by issuing a writ of possession evidence the fact that the state is involved in the enforcement of any judgment by confession. Whether the state's involvement rises to the level of "significant participation" needed for state action is a question which I need not address since Count II must be dismissed on other grounds.

The Court in *Overmyer*, faced with a similar situation, held that effective waiver is not precluded even though a debtor may not have been able to foresee exactly when or how a creditor would proceed under a confession clause, 405 U.S. at 187, 92 S.Ct. at 783. It follows that parties entering into a commercial lease must be held to know that a sheriff's levy may accompany a confession of judgment and that, under Pennsylvania law, this levy cannot be removed, even when the judgment is opened to review. A party to a confession of judgment clause waives its rights to object to these specific consequences.[7]

## STATE LAW CLAIMS

Plaintiff in Count III avers that defendant's actions infringe upon SMI's inherent right to property in violation of the Pennsylvania Constitution, Article I ¶ I. Count IV alleges negligence in that defendant failed to provide adequate security after it locked out SMI and, consequently, someone gained access and removed some of plaintiff's possessions. Count V pleads relief from defendant's malicious interference with contractual relations in that defendant's actions denied plaintiff use of its place of business and interfered with its business relations with customers and suppliers.

 Federal jurisdiction over state law claims is generally discretionary with the court. Since plaintiff has failed to allege an independent basis of federal jurisdiction, I will exercise my discretion and dismiss the pendent state claims in Counts III, IV, and V. *Aldinger v. Howard*, 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976); *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

I conclude that Count I must be dismissed for lack of state action, Count II must fall for failure to state a claim upon which relief can be granted, and the state law counts III, IV, and V, having no independent federal basis, must also be dismissed.

## ORDER

AND NOW, this 11th day of December, 1979, after consideration of briefs of counsel, defendant's motion to dismiss the complaint is granted for the reasons expressed in the accompanying memorandum.

---

7. Defendant's motion contends that plaintiff should be barred by the doctrines of res judicata and/or collateral estoppel from raising issues in a federal suit which he raised or could have raised in the state courts. Arguably, res judicata is applicable to the claim of the unconstitutionality of the Pennsylvania law which permits levies, attachments, and executions to stand even though the judgments have been opened. The complaint, ¶ 16–21 and ¶ 24, indicates that the issue of the validity of the Pennsylvania rule has been fairly litigated, having withstood briefing and argument in the Court of Common Pleas and the Pennsylvania Superior Court. Recently, the Third Circuit in *Riverside Memorial Mausoleum v. UMET Trust*, 581 F.2d 62 (3d Cir. 1978), analyzed the Pennsylvania confession of judgment process and held that those issues which were presented to the common pleas court in the petition to open were res judicata in a subsequent district court suit. Since I find that *Overmyer* adequately disposes of Count II, I need not address this res judicata issue in detail.

Defendant also raises the defense that no case or controversy exists since plaintiff petitioned the state court to open the confessed judgment and its motion was granted. I do not agree that the opening of the judgment resolved the controversy between the parties. Rather, it merely gave the plaintiff a state forum for adjudication of the validity of the judgment.