In re the EGG CRATE, INC., Debtor.

The EGG CRATE, INC., Plaintiff,

v.

Paul KOSSMAN and Sheraden Bank, Defendants.

In re the CHICKEN COOP, INC., Debtor.

The CHICKEN COOP, INC., Plaintiff,

v.

Paul KOSSMAN and Sheraden Bank, Defendants.

Bankruptcy Nos. 84–0096, 84–0097. Adv. Nos. 85–0090, 85–0089.

United States Bankruptcy Court, W.D. Pennsylvania.

Sept. 7, 1989.

Robert G. Sable, Amy S. Cunningham, Sable, Makoroff & Libenson, Pittsburgh, Pa., for debtor and defendant Sheraden Bank.

Richard A. Moses, Pittsburgh, Pa., for defendant Paul Kossman.

## MEMORANDUM OPINION

BERNARD MARKOVITZ, Bankruptcy Judge.

Before the Court are Plaintiffs' ("Debtors") Complaints To Determine Secured Status of Defendants Paul Kossman ("Landlord") and Sheraden Bank ("Sheraden"), and an Order directing distribution of sale proceeds held by their counsel which are subject to competing claims by Kossman and Sheraden.

Debtors maintain that the liens of Sheraden were perfected prior in time, and therefore, superior to any valid landlord's liens.

Kossman, the landlord, contends that pursuant to state law his liens are superior to Sheraden's, and that he is entitled to the net proceeds from the sale of Debtors' property.

The Court has considered all of the evidence presented, researched the applicable law, and finds for reasons set forth below that the landlord's liens are superior to those of a previously perfected secured creditor. Accordingly, the landlord is entitled to the net proceeds of the sale of Debtors' property.

## FACTS

Kossman, as landlord, and The Egg Crate, as tenant, entered into a lease on April 3, 1982, for premises known as Storeroom No. 133 at Parkway Center Mall, Pittsburgh, Pennsylvania. That same day, Kossman, as landlord, and The Chicken Coop, as tenant, entered into a lease for premises known as Storeroom No. 141 at Parkway Center Mall.

On September 30, 1983, Sheraden filed a UCC–1 Financing Statement with the Prothonotary of Allegheny County, Pennsylvania, in all restaurant furniture, equipment, utensils and fixtures located at Storeroom No. 133 which belonged to The Egg Crate. It filed a similar statement with the Secre-

tary of the Commonwealth of Pennsylvania on October 3, 1983.

On September 30, 1983, Sheraden also filed a UCC–1 Financing Statement with the Prothonotary of Allegheny County in all restaurant furniture, equipment, utensils, and fixtures located at Storeroom No. 141 which belonged to The Chicken Coop. It, too, filed a similar statement with the Secretary of the Commonwealth of Pennsylvania on October 3, 1989.

The Egg Crate and The Chicken Coop filed voluntary Chapter 11 bankruptcy petitions on January 16, 1984.

The landlord filed motions for relief from stay in both bankruptcy cases on February 24, 1984. Orders were entered in both cases on March 27, 1984, granting said landlord relief from stay, thereby authorizing him to utilize his state remedies.

In pursuit of its state remedies the landlord, on April 15, 1984, filed a Complaint in Confession of Judgment against the Chicken Coop in the Court of Common Pleas of Allegheny County in the amount of $225,411.69. He also filed a Complaint in Confession of Judgment in the same court on April 25, 1984, against the Egg Crate in the amount of $132,786.40.

Kossman entered Storerooms Nos. 133 and 141 on April 27, 1984. The landlord's activities that day, aside from taking inventory of all the property located therein, are not clear. However, notices of distraint were sent to both Debtors that same day.

On April 30, 1984, Debtors were restrained by security forces employed by the landlord when they attempted to remove their personalty from their respective locations.

On May 1, 1984, Debtors filed motions to cease and desist and for contempt against Kossman for interfering with Debtors' attempt to remove their property. For reasons unknown and unexplained to this Court, the record shows no activity in this case until January 22, 1985, wherein the Court entered an Order granting the landlord and Sheraden limited relief from the automatic stay in order to sell Debtors' property. The proceeds from the sale have been held by Debtors' counsel pending a determination by this Court of the rights of Kossman and Sheraden. The total proceeds of the sale of The Egg Crate's property amount to $6,523.00. The total proceeds of the sale of The Chicken Coop's property amount to $8,167.00. The determination of the issues herein will directly affect other litigation presently pending.

## ANALYSIS

■ The constitutionality of the distraint provisions set forth in the Pennsylvania Landlord and Tenant Act of 1951 is in question in light of two conflicting court decisions.

The earlier decision, *Luria Bros. & Co. v. Allen*, 672 F.2d 347 (3rd Cir.1982), upheld the constitutionality of the distraint provisions on the ground that the Due Process Clause of the 14th Amendment was not implicated because state action is not involved when a private landlord distrains. *Id.* at 353. The later decision, *Allegheny Clarklift, Inc. v. Woodline Industries of Pennsylvania*, 356 Pa.Super. 269, 514 A.2d 606 (1986), by contrast, invalidated the distraint provisions, averring they violate the Due Process Clause of the United States Constitution.

Debtors urge this Court to rely on *Allegheny Clarklift* and to hold that the distraint provisions under which the landlord acted on April 27, 1984 are unconstitutional, as the principal of both Debtors personally guaranteed the Sheraden loans. All sums paid on same reduces dollar for dollar the sum payable by said principal. Kossman, on the other hand, argues that *Luria Bros.* controls the present case, and that the landlord distraint is constitutionally permissible.

■ This Court is bound by a decision of the United States Court of Appeals for the Third Circuit when it predicts how Pennsylvania courts would interpret and apply Pennsylvania law, unless the Pennsylvania Supreme Court has reached a contrary conclusion or it appears from subsequent decisions of inferior Pennsylvania appellate courts that the United States Court of Appeals for the Third Circuit was in error.

*See Largoza v. General Electric Co.*, 538 F.Supp. 1164, 1166 (E.D.Pa.1982).

The Pennsylvania Supreme Court has not ruled on whether the distraint provisions of the Pennsylvania Landlord and Tenant Act of 1951 violate due process. The Pennsylvania Superior Court is the highest state court to rule on this issue. While the decision of the Pennsylvania Superior Court in *Allegheny Clarklift* is entitled to "proper regard", it need *not* be treated as conclusive. *See McKenna v. Ortho Pharmaceutical Corp.*, 622 F.2d 657, 662 (3rd Cir.), *cert. denied*, 449 U.S. 976, 101 S.Ct. 387, 66 L.Ed.2d 237 (1980).

This Court has carefully studied the rationale of *Allegheny Clarklift* and is *unable* to conclude with the requisite degree of certainty, *see Olson v. Paine, Webber, Jackson & Curtis, Inc.*, 806 F.2d 731, 734 (7th Cir.1986), that the decision in *Luria* is erroneous. Consequently, this Court has no alternative but to follow *Luria*.

The Pennsylvania Landlord and Tenant Act of 1951, 68 Pa.Stat.Ann. §§ 250.302 *et seq.* (Purdon's 1989), sets forth the self-help procedures a landlord must follow in order to lawfully take possession of, and sell for arrearages of rent, a tenant's personalty found on the leased premises. The Act is comprehensive and is intended to be complete and exclusive. *See In re Kelco Enterprises*, 86 B.R. 471, 474 (Bankr.W.D.Pa. 1988).

When rent is in arrears, a landlord may subject a tenant's personal property (which is not exempt under 68 Pa.Stat.Ann. § 250.401 *et seq.*) to "distress for any rent reserved and due". 68 Pa.Stat.Ann. § 250.302 (Purdon's 1989). Distraint may occur without giving the tenant prior notice and can be effected either by taking possession of the tenant's personal property or by posting a notice of distraint. Said distraint must indicate the amount of rent in arrears and list the property which is being levied upon. *Id.* The tenant must be given such notice within five (5) days after the "distress". *Id.*

If the tenant (or owner of the personal property) does not commence a replevin action within five (5) days of receipt of the notice of distraint, the landlord may have the goods appraised. 68 Pa.Stat.Ann. § 250.308 (Purdon's 1989). Once the goods have been appraised and after six (6) days' notice, the landlord may sell the distrained property to satisfy the arrearages. 68 Pa. Stat.Ann. § 250.309 (Purdon's 1989).

■ Kossman's actions were in compliance with 68 Pa.Stat.Ann. § 250.302. Specifically, Kossman effectively distrained the restaurant equipment and furniture belonging to Debtors when he reentered and took possession of Storerooms Nos. 133 and 141, respectively, on April 27, 1984. In addition, security forces employed by Kossman prevented Debtors on April 30, 1984, from removing their property from the premises. Kossman also sent the required notices of distraint to Debtors on April 27, 1984, which stated the amount of arrearages, listed the property being levied upon, and the date of the distraint.

■ Restaurant equipment and furniture in which a purchase money security interest remains in effect, is exempt from levy and sale on distress by the landlord, provided that written notice of the amount due is given to the landlord within ten (10) days of placement of the property on the premises. It is also exempt if the name and address of the secured party is marked on the property in a visible part thereof. 68 Pa.Stat. Ann. § 250.403 (Purdon's 1989).

■ The restaurant equipment and furniture distrained by Kossman on April 27, 1984 was not exempt from levy and sale.

Debtors do not contend that Kossman was given written notice within ten (10) days of placement of the various pieces of equipment and furniture or of the amounts due and owing to Sheraden.

In addition, Sheraden's name and address had not been attached to a visible part of the equipment and furniture. No evidence was presented that such information had been attached to the equipment and furniture in the Chicken Coop.

The only evidence showing that such information had been attached to the equipment located in The Egg Crate was provid-

ed by Debtor's principal. He testified that he personally had affixed labels to equipment and furniture in The Egg Crate which stated that that particular piece of equipment was subject to Sheraden's security interest. He further testified, however, that he did *not* affix such labels to *all* of the equipment and furniture in The Egg Crate. He could not say how many items he labelled or whether the remainder of the equipment and furniture had been so tagged by someone else.

The Court finds that only four (4) pieces of equipment had been so tagged, and that the remainder had not. The Manager of Parkway Center Mall testified that on April 27, 1984, he personally inventoried all of the equipment and furniture in The Egg Crate. He stated that, although he personally was looking for serial numbers, he would have noticed tags indicating that someone had a security interest in that piece of equipment or furniture. He further testified that none of the equipment or furniture in The Chicken Coop had been so tagged and that only the four items, all of which are so noted on his inventory sheet and deleted from the landlord's distress, had been so tagged.

Pursuant to the Order of Court entered on January 22, 1985, Kossman and Sheraden were granted limited relief from stay in order to sell Debtors' property. All proceeds from the sale were to be held by Debtors' counsel pending further Order of Court. The total proceeds of the sale of The Egg Crate property amount to $6,523.00. The total proceeds of the sale of The Chicken Coop property amount to $8,167.00.

■ Whenever goods upon which there is a distress for rent have been sold, the landlord acquires a lien on the proceeds of the sale. 68 Pa.Stat.Ann. § 322. Moreover, the landlord's lien is superior to a perfected security interest, even if the latter is first in time. *See Matter of Einhorn Bros., Inc.,* 272 F.2d 434, 440 (3rd Cir.1959). It therefore follows that Kossman's landlord's lien is superior to Sheraden's, and that Kossman is entitled to the net proceeds of the sale of Debtors' property.

■ Debtors have raised two (2) legal theories for the first time in their post-trial briefs which, they contend, defeat Kossman's liens. First, they argue that they may avoid the landlord's liens pursuant to 11 U.S.C. § 545(3) and (4), which provide that the trustee (or a debtor) may avoid the fixing of a statutory lien on a debtor's property, to the extent that such lien is for rent or distress of rent. In addition, they maintain that the liens are avoidable pursuant to 11 U.S.C. § 547(b) as preferential transfers.

Debtors primarily rely on *In re Matter of Allegheny Nursing Service, Inc.,* 17 B.R. 594 (Bankr.W.D.Pa.1982) and *In re John Deskins Pic, Inc.,* 59 B.R. 809 (Bankr.W.D. Va.1986).

Their reliance on these cases is misplaced because they are distinguishable from the present cases. In *Allegheny Nursing,* the landlord utilized a distraint process when the lease was in a non-default status. Absent "rent reserved and due", utilization of the Landlord and Tenant Act of 1951 at § 250.302 was inappropriate. In the case at hand it is clear Debtor was in a default status.

The state law and the issues raised in *Deskins* are at variance with the issues in the instant case. Even though the Trustee in *Deskins* had not formally sought to avoid the lien, as the landlord did not intervene until the day of the hearing, the issues were actually contested at the hearing. 59 B.R. at 814.

Relief may be granted on the basis of a theory of recovery only if that theory was set forth in the pleadings or was tried with the express or implied consent of the parties. *Evans Products Co. v. West American Ins. Co.,* 736 F.2d 920, 924 (3rd Cir. 1984).

Although Plaintiffs in the instant cases originally did maintain in the pleadings that Sheraden's security interests should take precedence over Kossman's landlord's liens, no allusion or reference was made therein to the legal theories they now seek to interpose. Rather, Plaintiffs merely sought to have Kossman's claims to the

sale proceeds denied. Furthermore, these legal theories were not raised at the hearing. Plaintiffs did *not* seek, in presenting their case, to avoid Kossman's liens pursuant to 11 U.S.C. §§ 545(3) and (4). Rather, Plaintiffs sought at the hearing to defeat the liens by evidence which was intended to show that they had complied with the notice requirements of 68 Pa.C.S.A. § 250.403 by posting notice of Sheraden's security interest in the equipment on a visible part thereof. Such evidence would *not* tend to establish that Kossman's liens are avoidable pursuant to 11 U.S.C. §§ 545(3) and (4).

Furthermore, it would appear that when the late Judge Gibson issued the Order of February 28, 1984, granting Kossman relief from stay, that the Court implicitly intended thereby to permit Kossman to distrain and to retain the proceeds derived from selling Debtors' equipment and furniture. Contrary to Debtors' contention, it is unlikely that the Court intended to lift the automatic stay to allow the landlord to take judgment, inventory the items, and distrain the personalty only to permit the Debtors thereafter to avoid same.

By negative implication, implicit in the February 28, 1984 Order, the Court permitted the actions and refused to permit the avoidance thereof. That decision of this Court in February of 1984, whether right or wrong, went unchallenged and now constitutes the law of the case. This Court is bound by same.

Appropriate Orders will be issued.

## ORDER OF COURT

AND NOW at Pittsburgh in said District this 7th day of September, 1989, in accordance with the foregoing Memorandum Opinion of this same date, it is hereby ORDERED, ADJUDGED and DECREED that:

(1) The claim of Paul Kossman to the sale proceeds in the above-captioned case is GRANTED; and the claim of Sheraden Bank to the sale proceeds in the above-captioned case is DENIED;

(2) The distribution of expenses of sale in the sum of $1,131.45; attorneys'
fees and costs in the sum of $1,928.60; and the balance available in the sum of $3,462.95 to Paul Kossman is authorized and APPROVED; and

(3) Counsel for Debtor, The Egg Crate, Inc., are authorized to disburse the funds as set forth above.

## ORDER OF COURT

AND NOW at Pittsburgh in said District this 7th day of September, 1989, in accordance with the foregoing Memorandum Opinion of this same date, it is hereby ORDERED, ADJUDGED and DECREED that:

(1) The claim of Paul Kossman to the sale proceeds in the above-captioned case is GRANTED; and the claim of Sheraden Bank to the sale proceeds in the above-captioned case is DENIED;

(2) The distribution of expenses of sale in the sum of $1,045.59; attorneys' fees and costs in the sum of $2,967.85; and the balance available in the sum of $4,153.26 to Paul Kossman is authorized and APPROVED; and

(3) Counsel for Debtor, The Chicken Coop, Inc., are authorized to disburse the funds as set forth above.